## CONTRIBUTORY NEGLIGENCE AT A GRADE CROSSING.

[Circuit Court of Portage County.]

### H. L. HINE, ADMINISTRATOR OF THE ESTATE OF GEORGE WILKIE, DECEASED, v. THE ERIE RAILROAD COMPANY.

Decided, February, 1905.

*Negligence—Questions as to at a Crossing—Of a Highway and Railway at Grade—Obstruction of View—Failure of Approaching Train to Blow Whistle or Ring Bell—Distraction from Headlight and Escaping Steam of Locomotive Standing on Sidetrack—Questions for the Jury.*

Whether or not a traveler upon a public highway who is killed at a grade crossing of a steam railroad is guilty of contributory negligence depends upon the circumstances of the particular case; and where the railroad company is guilty of negligence in unnecessarily obstructing the view of an approaching train which did not blow the whistle or ring the bell, the company at the same time permitting a locomotive with a brilliant headlight to stand on a sidetrack within one hundred and fifty feet of the highway, headed toward it, and blowing off steam; the traveler not being able to see the approaching train by reason of the obstructions until his horses are on the sidetrack and are also so frightened by the noise of the escape of steam and the glare of the headlight from the locomotive on the sidetrack as to require the attention of the traveler to control them. *Held:* It can not be said as a matter of law that the traveler is guilty of contributory negligence in not seeing, or in going ahead after seeing the approaching train, but the question of his negligence should be left to the determination of the jury.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Error to the Court of Common Pleas of Portage County.

The decedent, George Wilkie, was killed at a grade crossing over the tracks of the Erie Railroad Company in the village of Mantua, this county. The time of the accident was after six o'clock in the evening and quite dark. Main street, on which the accident occurred, runs north and south and at right angles with the tracks, and is about fifty feet wide. At the point of the accident the company has two main tracks, one for east

bound and the other for west bound trains, and also a long switch or siding.

Wilkie was driving south with two horses hitched to a large farm wagon.   The highway at this point was down grade southward, and his horses were spirited and afraid of the cars.   Between the side-track, which was the north track, and the first main track there was a space of fifteen feet and between the two main tracks a space of a thirteen feet.   As you approach the crossing from the north there is on the west side of the street a large building formerly used as a warehouse by the company, but at the time of the accident and for many years previously it had not been used for any purpose.   This building stood on the right of way of the railroad company and within eight feet of the north rail of the side-track.   West of this building was a high embankment, so that it was impossible for a traveler on the highway to see westward until within at least eight feet of the north rail of the side-track.

At the time of the accident there was a locomotive standing on the side-track on the east side of the highway about one hundred any fifty to two hundred feet from the same.   This locomotive was headed towards the highway and had a brilliant headlight and was blowing off steam.   The train that killed the decedent · approached from the west.   It was coming into the station, which was immediately east of the highway, and was running from five to ten miles an hour.   A number of witnesses testified that they heard no whistle sounded by the locomotive of this train, heard no bell or any other warning of its approach, to the highway or station.   The company had an electric bell at this crossing that worked automatically for the purpose of warning travelers on the highway of the approach of trains.   This electric bell did not ring upon the occasion of the accident, and was evidently out of order.   There is no evidence that the decedent knew of this electric bell.   The evidence showed that in coming down the street the horses driven by Wilkie were "on the bit," as it was called; that is, he was holding them with a tight rein standing in the middle of the wagon.   Some of the witnesses testified the horses were trotting; one witness said, more prancing than trotting, as they approached the

side-track. All the witnesses testified that as Wilkie approached the crossing he kept a strict lookout at the locomotive standing on the siding east of the highway, apparently holding hard on the horses, but one witness testifies that as he passed the building on the west he looked westward up the tracks. There was no evidence that he stopped his team. A number of witnesses testified that, seeing the approach of the train from the west, they hallooed to him, but there is no evidence that he heard them. It was this train that struck the team, killing him and the horses.

At the close of the evidence for plaintiff showing this state of facts the trial judge withdrew the evidence from the jury and dismissed the petition of plaintiff, and the error and the only error assigned is that the trial judged erred in so doing.

That the railroad company was guilty of negligence and gross negligence must be conceded. It permitted an old unoccupied building to remain on its premises, with no apparent use, for years, entirely obstructing the view to the westward until the traveler's horses were on the side-track. It permitted a locomotive to stand very close to the highway on the east side with a glaring headlight and blowing off steam that necessarily would frighten the horses of the traveler. It permitted its train to approach the highway and station without blowing the whistle or sounding the bell, as it under the law was required to do. Recognizing the dangerousness of this crossing it put up an electric bell to warn travelers of the approach of trains and yet permitted the bell to become out of order, thereby making it a snare rather than a warning.

But it is said, admitting all this, yet the decedent was guilty of such negligence that absolutely precluded him from recovering.

It must be admitted that, under ordinary circumstances, the traveler is guilty of negligence when he is caught at a crossing, and this court has been assiduous in upholding this theory, but there are cases in which it is not so and the court is not justified in saying as a matter of law that the traveler is guilty of contributory negligence. Where the crossing is of such character and the circumstances surrounding the traveler at the

time of the accident of such a nature as to put him in a perilous situation and to divert his attention, then a different rule applies.

In the case of *Pennsylvania Railroad Company* v. *Snyder*, 55 O. S., 197, it was held:

"When a person without his fault is placed in a situation of danger, he is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present; nor can it be said that, as matter of law, he is guilty of contributory negligence because he fails to make the most judicious choice between hazards presented, or would have escaped injury if he had chosen differently. The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do in the presence of such existing peril, and is one of fact for the jury."

In the opinion Chief Justice Williams says:

"Another ground urged for the reversal of the judgment is, that the evidence, without conflict, establishes negligence on the part of the defendant in error which contributed to the injury he sustained. Without entering into a general review of the evidence relating to the manner in which the injury was caused, or the conduct of the defendant in error, it is sufficient to say that, without his fault, and while in the performance of his duties in handling the car in question, he found himself in a situation of danger, on account of a defective ladder attached to the car which, at the time, he was attempting to ascend in order to manage the brakes as his duties required. The ladder had one broken round and was loose and shaky; but that was not discovered by him until after he had got upon it and was in the effort to reach the top of the car. While engaged in that effort, and in a very brief time after he stepped on the ladder, he was thrown to the ground and injured. It is claimed that when he discovered the danger he was in, he should have stepped to the ground, and that he could have done so with safety. By his failure to do that, it is contended, he brought about the injury, or at least contributed to produce it. When confronted with his peril, two ways of escape would naturally be suggested: one to leap from the car to the ground, and the other to do as he did, strive to reach the top of the car. It is not certain that the adoption of the former course presented by the alternative would have proven better than the latter; it might seem so from

a deliberate survey of the situation after the disaster had occurred; but when it is considered that it occurred in the darkness of the night, while the car was in motion, without opportunity of accurate observation of the condition of the ground, it is little more than conjecture that the defendant in error could, or would, by leaping to the ground, have escaped injury. And, in the exigencies of the situation in which he was placed, it could neither be expected nor required that he should exercise the same deliberate judgment that prudent persons would exercise where no danger is present, nor make the most judicious choice between hazards. The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do in the presence of the existing peril; and is one of fact for the jury. Measuring the conduct of the defendant in error by this rule, the jury have found he was not guilty of contributory negligence, and our duty does not lead us into an inquiry to ascertain on which side the preponderance of the evidence may be found."

In the case of The B. & O. R. R. Co. v. McClellan, Admx., 69 O. S., 142, it is held:

"Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, and no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence, to direct a verdict, and a refusal to sustain such motion is error."

Judge Spear in the opinion says, referring to the case in hand:

"The case is wholly dissimilar from the reported cases where a close question of fact appears and the judgment of a jury is required to determine it. As in Hart v. Devereaux, 41 Ohio St., 565, where the deceased was driving a pair of spirited horses over a crossing at the side of which stood a locomotive blowing off steam which frightened the horses, and so engaged the driver's attention that he did not observe the approach of an express train coming rapidly and without warning from the opposite direction, the view down the track being obscured by buildings, and was killed by the express. As, also in Railway Co. v. Snell, 54 Ohio St., 197, where there was a conflict in the evidence as to whether the injured party was exercising his

faculties of seeing and hearing, and it was held a proper question to be submitted to the jury.''

In the case of *Cincinnati Street Ry. Co.* v. *Snell*, 54 O. S., 197, it is held:

''3. A person about to cross the track of a street railway at a street crossing is bound to exercise care proportioned to the danger to be avoided and the consequences which might result from the want of it, conforming in amount and degree to the particular circumstances surrounding him; but it is only ordinary care which is required, that which might reasonably be expected of persons of ordinary prudence.    Ordinary care does not require him to anticipate negligence on the part of those operating the railway.    And while he should use his faculties for his own protection, it is not negligence *per se* for him to omit to look in both directions for the approach of a car. Whether it is or not negligence  depends upon the circumstances.

''4. Where the evidence of the plaintiff shows actionable negligence on the part of the company, and the quest'on of contributory negligence of the plaintiff depends upon a variety of circumstances from which different minds may reasonably arrive at different conclusions as to whether there was contributory negligence or not, the question should be submitted to the jury under proper instructions; and it is error in such case for the court to direct a verdict for the defendant.

''5. And where in such case the question as to whether or not the plaintiff exercised his faculties of seeing and  hearing before attempting to cross is in issue, and the oral evidence tends to show that he did, while circumstantial evidence tends to disprove that claim, a condition is presented involving such variety of circumstances as makes it proper to submit the question to the jury.''

In the opinion Judge Spear says:

''The ground upon which the common pleas directed a verdict was that the plaintiff's evidence disclosed contributory negligence of such a character as to preclude a recovery.    In other words, the holding was that, as matter of law, the plaintiff was guilty of contributory negligence.    If the plaintiff's conduct, as shown by the undisputed facts, left no rational inference but that of negligence, then the ruling was right; but if the question of contributory negligence depended upon a variety of circumstances from which different minds might arrive

at different conclusions as to whether there was negligence or not, then the ruling was wrong.  This follows from the rule given in *Ellis & Morton* v. *Ins. & Trust Co.*, 4 Ohio St., 627. Applying the doctrine of that case, the motion involved an admission of all the facts which the evidence in any degree tended to prove, and presented only a question of law, whether each fact indispensable to the right of action, and put in issue by the pleadings, had been supported by some evidence.  If it had been, no matter how slight the evidence, the motion should have been denied, because it was the right of the plaintiff to have the weight and sufficiency of his evidence passed upon by the jury.  But if he had failed to give evidence tending to establish any fact without which the law would not permit a recovery, he had nothing to submit to the jury, and a question of law only remained.  We are aware that this rule is much criticised, and plausible arguments against its reasonableness have been adduced, but it has been followed uniformly and should be applied until definitely overruled, or changed by legislation.

"The plaintiff was himself bound to use ordinary care, such degree of care as a man of ordinary prudence commonly uses under like circumstances; care proportioned to the danger to be avoided, and the consequences which might result from the want of it, conforming in amount and degree to the particular circumstances under which it was to be exercised.  If all people exercised the greatest possible caution in approaching and crossing railroad tracks, accidents would be much less frequent than they are; but the law does not require extreme care.  Such care, and such only, as ordinarily prudent persons could reasonably be expected to exercise under the circumstances is the full measure.  In order, therefore, to judge whether or not a fair question was presented regarding plaintiff's contributory negligence, we must inquire into the circumstances as disclosed by the evidence he introduced."

Under these rules which are the settled ones in this state, we think the question of the contributory negligence of the deceased in this case should have been left to the jury.  He had a right to rely on the fact that the company in the management of its trains would not be guilty of such gross negligence as to not sound the whistle or ring the bell in approaching the crossing; that it would see to it that its electric bell would be in order and give warning to the traveler on the approach of trains and particularly so when the crossing was in the condition it

was that night.   Furthermore, his horses must have been upon the side-track before he could have seen the approaching train, and, under the circumstances, very probably could not have heard it at all.   When his horses' feet were upon the side-track his attention necessarily—with a spirited team, frightened by the glare of the headlight and the noise of escaping steam—would be directed to the locomotive on the side-track, not knowing whether it was about to move or not.   When he looked to the west, if he did so, he might have seen the approaching train and, if he had then stopped, probably he might have saved his life—possibly he might not.

Was the going ahead under such circumstances such evidence "as left no rational inference but that of negligence?"   "Might different minds reasonably arrive at different conclusions as to whether there was contributory negligence or not?"

He may have misjudged the distance of the approaching train in the glare of the headlight and the confusion surrounding him.   If he stopped, the locomotive on the side-track might move down upon him.   His team, already restless and frightened, might become unmanageable.   Who can judge with certainty what a person unaccustomed to such situation should or would or ought to do under such circumstances?

"It can not be said as a matter of law that he is guilty of contributory negligence because he failed to make the most judicious choice between hazards presented, or would have escaped injury if he had chosen differently.   The question in such case is not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do in the presence of such existing peril, and is one of fact for the jury."

Judgment reversed and cause remanded for a new trial.

*Ingell & Webb*, for plaintiff in error.

—— *Siddall*, for defendant in error.